

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 23, 2015.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 15-50122-CAG |
| NORRIS J. DEVOLL, | § § | CHAPTER 7 |
| Debtor. | § § | |

| | | |
|---|---|---|
| REBECCA DEMONBREUN, WILLIAM DOWDS AND KATHLEEN HURREN, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | ADVERSARY NO. 15-05025-CAG |
| NORRIS J. DEVOLL, | § § | |
| Defendant. | § § | |

### ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 13)

Came on for consideration the above-numbered adversary proceeding and, in particular,

1

Plaintiffs' Motion for Summary Judgment (ECF No. 13[1]) and Defendant's Response thereto (ECF No. 15). The Court also considered Plaintiffs' Reply to Defendant's Response (ECF No. 23), Defendant's Response to Plaintiffs' Reply (ECF No. 27), and Plaintiffs' Sur-Reply to Defendant's Response to Plaintiffs' Reply (ECF No. 29). This Court took the matter under advisement without the necessity of a hearing. After considering the pleadings and arguments of counsel contained therein, the Court finds that Plaintiffs' Motion for Summary Judgment should be granted, in part and denied, in part.

As an initial matter, the Court finds that it has jurisdiction over this proceeding under 28 U.S.C. §§ 157(b) and 1334 (2012). This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) (determinations as to the dischargeability of particular debts), in which the Court may enter a final order. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is referred to the Court pursuant to the District's Standing Order of Reference.

## PROCEDURAL BACKGROUND AND PARTIES' CONTENTIONS

Debtor Norris J. Devoll ("Defendant") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 7, 2015. On April 13, 2015, Plaintiffs Rebecca Demonbreun, William Dowds and Kathleen Hurren ("Plaintiffs") filed their Original Complaint to determine Dischargeability of Debt alleging that a state court judgment entered against Defendant is non-dischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(A).[2]

The parties agree that on or about February 16, 2010, the 288th District Court of Bexar County, Texas awarded a judgment in favor of Plaintiffs Rebecca Demonbruen and William Dowd and against Defendant in the amount of $114,721.00, plus court costs, prejudgment

---

[1] Unless otherwise noted, all references to "ECF" herein refer to documents filed in Adversary Case No. 15-05025-cag.

[2] Unless otherwise indicated, all references are to 11 U.S.C. *et seq.*

2

interest, and attorney's fees (hereinafter "State Court Judgment"). The parties agree that the State Court Judgment is based on the jury's findings pursuant to the Texas Deceptive Trade Practices Act ("DTPA") and is a final judgment.[3] The parties also agree that Plaintiffs obtained a turnover order but dispute whether appointment of the receiver, Kathleen Huron, was to assist Plaintiffs in collecting on the State Court Judgment. Finally, the parties agree that the Fourth Court of Appeals affirmed the State Court Judgment in its own Memorandum Opinion (hereinafter "Appellate Opinion"), and the Supreme Court of Texas declined writ of error.

Plaintiffs argue that, in the underlying state court action, Plaintiffs alleged and proved that Defendant had committed intentional and knowing misrepresentations and failures to disclose regarding the condition of the home he sold to Plaintiffs on which Plaintiffs relied to their damage. Plaintiffs assert that collateral estoppel and/or res judicata prevent re-litigation of whether Defendant obtained money from Plaintiffs by false pretenses, a false representation, or actual fraud. Plaintiffs argue that the issue of whether Defendant intentionally violated the DTPA was actually litigated in the prior state court action, and was a necessary part of the judgment entered in that case. Further, Plaintiffs quote the appellate court's ruling upholding the "jury's conclusion that Devoll misrepresented the condition of the property with the intention of inducing Demonbreun and Dowds into a transaction they would not have otherwise entered into" as affirmation of the jury's alleged finding of the requisite intent necessary to satisfy § 523(a)(2)(A). Therefore, Plaintiffs argue that the State Court Judgment should be deemed non-dischargeable under § 523(a)(2)(A) as a matter of law.

---

[3] Plaintiffs incorrectly assert that Defendant admitted in paragraphs 6 and 7 of his answer that the "[state court] judgment was based on the jury's verdict finding that DeVoll had intentionally violated the DTPA in connection with his sale of a home to Plaintiffs …." Having reviewed the Plaintiffs' Complaint and Defendant's Amended Answer, the Court concludes that Defendant only admitted that the judgment was entered and its amount (*see* Paragraph 6) and that the judgment was based on the jury's verdict pursuant to the Texas Deceptive Trade Practices Act (*see* Paragraph 7). Defendant specifically denied that the judgment constitutes a viable claim under § 523 and thus, denied the assertion that the jury's verdict found a knowing and intentional violation.

Defendant argues that summary judgment may not be granted for several reasons. First, Defendant has pled the affirmative defense of payment and asserts that the debt is no longer in existence because the judgment has been satisfied. Second, Defendant argues that collateral estoppel does not apply to this dischargeability claim because the State Court Judgment and jury findings are silent as to which of the DTPA laundry list items were found to be violated and the question of intent is embodied only in a question that could alternatively apply to acts or practices that do not constitute grounds for non-dischargeability under § 523(a)(2)(A). Third, Defendant argues that the appellate court did not find that the judgment was supported by sufficient evidence of Defendant's intent to defraud. Rather, the appellate court determined only that the evidence was sufficient to support the jury's findings. Defendant argues that the judgment contains no findings of actual fraud and that the jury charge and answers thereto do not constitute a finding of fraud or intent to defraud. Therefore, Defendant argues that material issues of fact remain to be litigated and request denial of Plaintiffs' Motion for Summary Judgment.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. If summary judgment is appropriate, the Court may resolve the case as a matter of law. **Celotex Corp.**, 477 U.S. at 323; **Blackwell v. Barton**, 34 F.3d 298, 301 (5th Cir. 1994).

The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of sufficient quality so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita*, 475 U.S. at 585–87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial"). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).

In determining whether a genuine issue of material fact exists, the nonmoving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists. A genuine issue of material fact is not raised by mere conclusory allegations or bald assertions unsupported by specific facts. *Leon Chocron Publcidad Y Editoria, S.A. v. Jymm Swaggart Ministries*, 990 F.2d 1253 (5th Cir. 1993). The formula does not vary were the plaintiff challenges the defendant's affirmative defense in its summary judgment. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1075 (5th Cir. 1997). Defendant must still "present admissible evidence legally sufficient to sustain a finding favorable to [the defendant] … on each element of that defense." *Id.* (citing *Crescent Towing & Salvage*

*Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994)).

## II. The Doctrine of Collateral Estoppel Bars Re-Litigation of Fraud Under § 523(a)(2)(A)

"A debtor in a proceeding to determine the non-dischargeability of a debt under section 523(a) may invoke the doctrine of collateral estoppel to bar re-litigation of factual and legal issues that were actually litigated and determined in a prior state court proceeding." *In re Horne*, 2011 WL 3550473, *4 (Bankr. W.D. Tex. Feb. 2, 2011) (citing *Grogan v. Garner*, 498 U.S. 279, 285, n. 11 (1991); *RecoverEdge, LP v. Pentecost*, 44 F.3d 1284, 1295 (5th Cir. 1995)). Under the doctrine of collateral estoppel or issue preclusion, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *RecoverEdge*, 44 F.3d at 1290 (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). In determining the preclusive effect of a state court judgment, the bankruptcy court must apply the rules of preclusion from the state where the judgment was rendered. *Plunk v. Yaquinto (In re Plunk)*, 481 F.3d 302, 307 (5th Cir. 2007). Under Texas law, the party seeking to invoke collateral estoppel must establish: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Mann v. Old Republic Nat. Title Ins. Co.*, 975 S.W.2d 347, 350 (Tex. App.—Houston 1998, no pet.).

Additionally, in the context of a non-dischargeability action, the federal test for collateral estoppel must also be considered. *RecoverEdge*, 44 F.3d at 1290 (citing *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 664 (5th Cir. 1994)). Under federal law, the following three elements must be met in order for collateral estoppel to apply: "(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been

6

actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action." *Id.* at 1290. "Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue … and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met." *Id.* at 1290–91(citing ***Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.***, 801 F.2d 748, 751 (5th Cir. 1986); ***United States v. Shanbaum***, 10 F.3d 305, 311 (5th Cir. 1994)). Collateral estoppel will not apply where a second action involves application of a different legal standard than the first, even if the factual setting is the same. *Id.* at 1291.

      i. *Review of Elements Necessary to Prevail Under § 523(a)(2)(A)*

Under § 523(a)(2)(A), debts "for money, property, services, or an extension, renewal, or refinancing of credit" are not dischargeable if the debt was "obtained by false pretenses, a false representation, or actual fraud." In the Fifth Circuit, "different, but somewhat overlapping, elements of proof for § 523(a)(2)(A) actual fraud, as opposed to false pretenses/representation" are applied. ***AT&T Universal Card Servs. v. Mercer (In re Mercer)***, 246 F.3d 391, 403 (5th Cir. 2001). The Fifth Circuit requires that "[a] creditor must prove the debtor's intent to deceive in order to obtain a non-dischargeability judgment under […] § 523(a)(2)(A)." ***Friendly Fin. Serv.—Eastgate v. Dorsey (In re Dorsey)***, 505 F.3d 395, 399 (5th Cir. 2007). In order to succeed under § 523(a)(2)(A), a creditor must prove (1) that the debtor made a representation; (2) that the debtor knew was false; (3) that the debtor made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relief upon; and (5) that the creditor sustained a loss as a "proximate result" of its reliance. ***Gen. Elec. Capital Corp. v. Acosta (In re Acosta)***, 406 F.3d 367, 372 (5th Cir. 2005) (citing ***Mercer***, 246 F.3d at 403).

*ii.     Analysis of the State Court Judgment and Jury Findings*

In the State Court Judgment, the jury charge contained the following relevant questions:

Question 1:  Did Norris J. DeVoll engage in any false, misleading, or deceptive act or practice that Rebecca Demonbreun and William Dowds relied on to their detriment and that was a producing cause of damages to Rebecca Demonbreun and William Dowds?

  PRODUCING CAUSE means a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred.  There may be more than on producing cause.

  FALSE, MISLEADING, or DECEPTIVE ACT OR PRACTICE means any of the following:

  A.  Failing to disclose information about the properties in question that was known by Norris J. DeVoll at the time of the transaction with the intention to induce Rebecca Demonbreun and William Dowds into a transaction they would not have entered into if the information had been disclosed;
  B.  Misrepresenting that the properties in question were of a particular standard, quality, or grade, if they are of another; or
  C.  Misrepresenting that the properties in question had characteristics, uses or benefits which they do not have.

  ANSWER "Yes" or "No"

  We, the jury answer:  Yes

Question 2:  Did Norris J. DeVoll engage in any unconscionable action or course of action that was a producing cause of damages to Rebecca Demonbreun and William Dowds?

  An unconscionable action or course of action is an act or practice that, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

  ANSWER "Yes" or "No"

  We, the jury answer:  Yes

If your answer to Questions 1 or 2 is "Yes," then answer the following question. Otherwise, do not answer the question.

Question 3:  Did Norris J. Devoll engage in any such conduct knowingly and/or

8

intentionally?

"Knowingly" means actual awareness, at the time of the conduct, of the falsity, deception, or unfairness of the conduct in question. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

"Intentionally" means actual awareness of the falsity, deception, or unfairness of the conduct in question, coupled with the specific intent that the consumer act in detrimental reliance on the falsity or deception or detrimental ignorance of the unfairness. Specific intent may be inferred where objective manifestations indicate that a person acted with such flagrant disregard of prudent and fair business practices that the person should be treated as having acted intentionally. In answering this question, consider only the conduct that you have found was a producing cause of damages to Rebecca Demonbreun and William Dowds.

Knowingly:

    Answer: <u>Yes</u>

Intentionally:

    Answer: <u>Yes</u>

The judgment itself merely states that it is entered "[p]ursuant to the jury's findings of liability and damages under the Deceptive Trade Practices Act …" and does not make any statement regarding Defendant's intent.

Here, the Court agrees with Defendant and finds that the State Court Judgment and jury findings do not definitively address the question whether debtor made representations with the intent to deceive the creditor. There are two instances in the jury instructions where Defendant's intent is implicated. First, in the definition of "false, misleading or deceptive act or practice," Question 1 provides a requirement in subsection "A" that Defendant's failure to disclose be done with "the intention to induce." Subsection "A," however, is only one of three *options* to define a "false, misleading or deceptive act or practice" given. As such, the jury could have reached their affirmative answer by finding that Defendant satisfied one of the definitions under subsections

9

"B" or "C"—neither of which includes a scienter requirement. Second, Question 3 required the jury to determine whether Defendant engaged in "any such conduct knowingly and/or intentionally." Question 3, however, asks the jury to consider affirmative answers to Questions 1 *or* 2 and does not ask the jury whether they find Defendant acted knowingly or intentionally in committing a "false, misleading or deceptive act or practice" or in committing "any unconscionable act or course of action."

This case and the jury instructions provided are nearly identical to those recently considered by Judge Bohm in the Southern District of Texas in his opinion ***Gilbert v. Dang (In re Anh Van Dang)***, in which Judge Bohm determine that a DTPA violation based on "an unconscionable course of action does *not* satisfy the elements of § 523(a)(2)(A)." 2015 WL 6689316 (Bankr. S.D. Tex. October 30, 2015) (c*iting* ***In re Bairrington***, 183 B.R. 754 (Bankr. W.D. Tex. 1995) ("intent to deceive the consumer is not required in order to maintain a cause of action for unconscionable conduct …")). In ***In re Anh Van Dang***, ultimately, the court found that because the jury and state trial court had "rigorously considered" the issue of fraud as defined by § 523(a)(2)(A), an exception to the general rule that multiple or alternative determinations do not permit collateral estoppel to foreclose the § 523(a)(2)(A) litigation applied and the judgment at issue was found non-dischargeable. Here, if we look only to the State Court Judgment and jury findings, there is no indication that the jury rigorously considered the issue of fraud. The law of this case, however, does not end with the State Court Judgment and jury findings. Rather, the jury's findings and the judgment were appealed to the Fourth Court of Appeals.

    iii.    *Analysis of Appellate Court Opinion*

The Fourth Court of Appeals' Memorandum Opinion affirming the jury's findings and

judgment of the trial court is submitted as summary judgment evidence by Plaintiffs and may be found at *Devoll v. Demonbreun*, 2012 WL 983107 (Tex. App.—San Antonio March 12, 2012, pet. denied) (hereinafter cited as "Appellate Opinion"). At the appellate level, Defendant challenged whether the causation element to recover under the DTPA had been met by asserting that the existence of an "as is" clause in the residential sales contract between the parties negated causation.

The appellate court reviewed the "legal questions that rest on a factual basis *de novo*, while affording deference to the jury's fact findings." Appellate Opinion, at *4 (citations omitted). In its analysis, the appellate court cited to Texas Supreme Court precedent stating that "[a] buyer is not bound by an agreement to purchase something 'as is' that he is induced to make because of a fraudulent representation or concealment of information by the seller." *Id.* at *5 (quoting *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995)).

Thus, in considering whether the jury's findings were sufficient to uphold the judgment, the appellate court was required to determine whether the evidence supported a finding of fraud. In other words, if the "as is" clause negated the causation element of the DTPA claim, then it was implied that Defendant had not made fraudulent misrepresentations. Conversely, if the "as is" clause was not found to negate causation so that the DTPA claim was successful, then it must be implied that Defendant's fraudulent misrepresentations rendered the "as is" clause unenforceable.

Here, the appellate court "examine[d] the evidence to determine whether DeVoll made any fraudulent representations to Demonbreun and Dowds in order to induce them to enter into the 'as is' agreement." Appellate Opinion, at *7. The appellate court then recited the following elements of fraud under Texas law:

11

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Id.* (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) [citations omitted]). Looking at the evidence presented at trial in the light most favorable to the jury's findings, the appellate court ultimately concluded:

> [T]here is evidence to support the jury's conclusion that DeVoll misrepresented the condition of the property *with the intention of inducing* Demonbreun and Dowds into a transaction they would not have otherwise entered into. Because DeVoll had superior knowledge of the house's condition, including knowledge that certain repairs had been made or attempted, his statement that there was nothing wrong with the house amounted to a fraudulent misrepresentation.

Appellate Opinion, at *8 (emphasis added). Therefore, the appellate court concludes that the "as is" clause of the parties' agreement did not negate causation as a matter of law.

In comparing the elements of § 523(a)(2)(A) and the elements of fraud affirmed by the appellate court, this Court finds that the doctrine of collateral estoppel applies and bars this Court from re-litigating the issue of fraud or overruling the determination of the state appellate court. First, the Appellate Opinion establishes that Defendant made a representation in that it concludes he made a statement regarding the condition of the house. Second, the Appellate Opinion establishes that the Defendant knew such representation was false because he had knowledge of the condition of the house—including knowledge of what repairs had been made or attempted. Third, the Appellate Opinion establishes that Defendant made the representation with the intent to deceive Plaintiffs because he made the representation with the intention of inducing Plaintiffs into the transaction. Fourth, the Appellate Opinion and the State Court Judgment establish that Plaintiffs actually and justifiably relied upon Defendant's representation regarding the house

12

because Plaintiffs would not have entered into the transaction otherwise. Lastly, the Appellate Opinion and State Court Judgment establish that Plaintiffs sustained a loss as a "proximate result" of its reliance because the "producing cause" of the Plaintiffs' damages was Defendant's misrepresentation. Therefore, all five elements required for a finding of non-dischargeability under § 523(a)(2)(A) were sufficiently supported by evidence in the jury's findings and explicitly affirmed by the appellate court.

Under the doctrine of collateral estoppel, Plaintiffs have shown that the elements under Texas law are met because: (1) the facts of the dischargeability action relating to the establishment of fraud were fully and fairly litigated in the state court action; (2) those facts relating to the establishment of fraud were essential to the state court judgment; and (3) the parties in this dischargeability action are the same as in the state court action relating to the establishment of fraud. Under federal law governing the doctrine of collateral estoppel, Plaintiffs have shown that all three elements are met because: (1) the issue at stake in the dischargeability action as it relates to the establishment of fraud is identical to what the appellate court considered in the state court action; (2) the issue of fraud was actually litigated in the state court action; and (3) the determination of the fraud issue was a necessary part of the judgment in the state court action. The Court will point out that, without establishment of fraud as it relates to the "as is" clause at issue in the state court action, the DTPA claim would not have been successful because causation could not have been proven. Therefore, a finding of fraud—although implicit at the jury findings level—was a necessary part of the judgment so that the appellate court had to find sufficient evidence of fraud to support the jury's findings.

As such, the Court finds that the issue of establishment of fraud under § 523(a)(2)(A) is subject to the doctrine of collateral estoppel and this Court will not re-litigate what has already

13

been decided in the state court action. Plaintiffs' Motion for Summary Judgment should be granted in respect to the establishment of fraud under § 523(a)(2)(A).[4]

### III. A Material Issue of Fact Remains Regarding Defendant's Affirmative Defense of Payment

Defendant asserts that, in addition to satisfying the elements for a discharge exception under § 523(a), Plaintiffs must establish they have a valid debt. Defendant directs this Court to *In re August*, 448 B.R. 331, 346–47 (Bankr. E.D. Pa. 2010), which provides that there are two requirements to maintain a § 523(a) action: (1) a valid debt; and (2) satisfaction of the elements for a discharge exception under § 523(a). In the Fifth Circuit, however, the requirement of a valid debt to proceed with a § 523(a) action is an issue of standing. *See **In re Vahlsing***, 829 F.2d 565 (5th Cir. 1987) (holding that a plaintiff whose claim had been dismissed is not a creditor and therefore, lacks standing to object to debtor's discharge under § 727(c)(1)); *see also **In re Smith***, 2006 WL 2087830, *2–3 (Bankr. S.D. Tex. July 11, 2006) (holding that the reasoning of *In re Vahlsing* would apply to a plaintiff's standing in an objection to dischargeability under § 523(a)); *see also **In re Davis***, 194 F.3d 570, 573 (5th Cir. 1999) ("The only requirement for standing to bring a nondischargeability action … is that the action must be brought by a creditor.").

A creditor is an "entity that has a claim against the debtor that arose at the time of or

---

[4] In its Response to Plaintiffs' Reply to Defendant's Response (ECF No. 27), Defendant brings to the Court's attention the case of **Huskey Int'l Electrs., Inc. v. Ritz**, 787 F.3d 312 (5th Cir. 2015), which has been granted certiorari by the United States Supreme Court (Docket No. 15-145). Defendant asserts that the Fifth Circuit Court of Appeal's opinion narrowed the fraud requirement of a dischargeability claim brought pursuant to § 523 and found that exceptions to discharge should be construed narrowly and in favor of debtors' interest in a fresh start. The Court agrees that the Fifth Circuit Court of Appeals did narrow the category of cases that may fall under § 523(a)(2)(A)'s dischargeability exception for actual fraud but finds that the *Ritz* opinion does not change this Court's analysis. The *Ritz* opinion answered the question whether a representation is necessary to trigger § 523(a)(2)(A)'s "actual fraud" exception to discharge. Thus, the Fifth Circuit Court of Appeals in *Ritz* was determining the scope of the elements required under § 523(a)(2)(A). Here, there is no question that the express requirements of § 523(a)(2)(A) are met by the appellate court's finding of sufficient evidence and the jury's findings accompanying the State Court Judgment. There is no "fraud implied by law" implicated in this case; a finding of actual or positive fraud was necessary for enforceability of the "as is" clause to be negated.

before the order for relief concerning the debtor." § 101(10)(A). A claim is a "right to payment, whether or not such right is reduced to judgment…." § 101(5)(A). Thus, if payment of the judgment has not been made in full, Plaintiffs in this case are creditors with standing to pursue their § 523(a) action. If, however, payment of the judgment was made in full prior to the date of the order for relief, Plaintiffs do not have a claim and do not have standing to maintain their § 523(a) action. Here, although the Court has determined that the State Court Judgment would be non-dischargeable under § 523(a)(2)(A), Plaintiffs must still prove that they have a valid debt because Defendant has challenged Plaintiffs' standing through its affirmative defense of payment. If Plaintiffs do not have a valid debt pursuant to the State Court Judgment, their § 523(a)(2)(A) claim must be dismissed for lack of standing.[5]

In support of his assertion of payment, Defendant offers the following summary judgment evidence:

1. Affidavit of Defendant (Ex. D-1);

2. Order Appointing Receiver entered on April 11, 2012, in the state court case (Ex. D-2);

3. Plaintiffs' Amended Application for Turnover Relief and Appointment of Receiver filed on July 12, 2011, in the state court case (Ex. D-3);

4. Order for Turnover Relief entered on August 1, 2011, in the state court case (Ex. D-4);

5. Receiver's Report and Notice of Credit Against Judgment filed on July 10, 2013, in the state court case (Ex. D-5);

6. A document dated August 9, 2011, from the Bexar County Sheriff's Office detailing receipt of 5 items from Defendant pursuant to the Turnover Order (Ex. D-6);

---

[5] The Court will note that there has not been a claim or objection to claim filed in this Chapter 7 case; nor has any party asked this Court to determine the extent of the debt owing on the State Court Judgment. As such, the only remaining issue for trial is whether a debt based on the State Court Judgment existed at the time of the Order for Relief. The Court will not determine whether partial satisfaction has been made.

15

7.  A document dated October 4, 2011, purporting to show turnover of 8 items on October 6, 2011, pursuant to the Turnover Order (Ex. D-7); and

8.  Plaintiffs' Third Amended Original Petition filed on August 5, 2009, in the state court case (Ex. D-8).

In regards to whether payment has been made, Plaintiffs offer summary judgment evidence in the form of the Affidavit of the Receiver, Kathleen A. Hurren, with attachments of the Order Appointing Receiver and Defendant's "Letter of Transmittal accompanying debtor's compliance with Plaintiff's SECOND Order for Turnover Relief Entered in the 408th District Court on August 1, 2011" [sic].

In examining the summary judgment evidence, the Court must examine the evidence in the light most favorable to the non-movant—in this case, the Defendant. Defendant has not moved for summary judgment on his affirmative defense of payment. Defendant must, however, offer some admissible evidence to sustain a finding that payment in full has been made so that Plaintiffs are no longer creditors under the state court judgment. The Court finds that, viewing the evidence in the light most favorable to non-movant, an issue of fact remains regarding whether the state court judgment has been fully satisfied. Both parties offer some evidence that turnover of property in compliance with a Turnover Order may have occurred, although there is a dispute as to the value of the properties turned over and whether certain properties were submitted at all. This is a fact issue that the Court will resolve at trial and shall accept evidence on the issue. For this reason, the Court declines to grant Plaintiffs' Motion for Summary Judgment on the issue of Defendant's affirmative defense of payment. The parties shall proceed to trial on the issue of payment alone.

## CONCLUSION

For these reasons, it is ORDERED that Plaintiffs' Motion for Summary Judgment (ECF

No. 13) is GRANTED, in part and DENIED, in part.

It is further ORDERED that the parties shall proceed to trial only on the issue of Defendant's affirmative defense of payment.

###